ELIHU GRANGER, Appellant, *v.* THE BOARD OF TRUSTEES OF THE ILLINOIS AND MICHIGAN CANAL, Appellees.

APPEAL FROM COOK.

A party who leased improved canal lots from the canal commissioners in 1841, and made reparations and improvements thereon prior to the 1st of December, 1842, has not a right to purchase the lots at their appraised value, under the provisions of the 13th section of the act of the 21st of February, 1843, and the 2d sect. of the act of the 4th of March, 1843.

THIS cause was heard at the May term, 1851, of the Cook Circuit Court, before H. T. DICKEY, Judge. The bill was dismissed, and an appeal taken to this court.

The facts of the case are fully stated in the opinion of the court.

E. W. TRACY, for the appellant.

N. H. PURPLE & E. C. LARNED, for the appellees.

TREAT, C. J. This was a suit in chancery, brought by Elihu Granger against The Board of Trustees of the Illinois and Michigan Canal. The bill was filed in May, 1849, and alleged,

Granger v. The Board of Trustees of the Illinois and Michigan Canal.

in substance, that complainant, in May, 1841, took possession of lots two, three, four and six, in block four, in the original town of Chicago, and has ever since had the exclusive possession of the same; that during the spring and summer of that year, he built a soot-house on lots three and four, also a large wooden building on lots two and three, and placed therein an engine and other machinery, and put in operation a foundery and finishing shop, also a building of wood on lot two, and put two forges therein, and has since used it as a blacksmith's shop; that during the year 1841, he put lots three and four in cultivation, and has since continued to cultivate the same; that he inclosed lot six, which he has since used as a yard for horses, and for stacking hay and piling lumber; that he took up his residence on lots three and four, in 1841, and resided there till 1847, since which time he has used the dwelling-house standing thereon, as a boarding-house for his workmen; that prior to December, 1842, he built a large out-building on the lots, an addition to the stable, an out-door oven, an aqueduct to the soot-house, repaired and painted the dwelling-house, added a portico and kitchen thereto, made new fences, and sunk a well and constructed an aqueduct from the river to the same; that he entered on the lots with the intention of becoming the purchaser thereof, and has expended large sums of money in making permanent improvements thereon; that the lots form a part of the lands granted by the United States to the State of Illinois, to aid in the construction of the Illinois and Michigan Canal, and were included in the grant made by the State to the board of trustees, and have been appraised at the sum of $11,450; that complainant has the right to purchase the lots at their appraised value, by virtue of the 13th section of the act of the 21st of February, 1843, and the 2d section of the act of the 4th of March, 1843; that, on the 10th of May, 1849, he made application to the trustees to purchase the lots, presented full proof to his right of preemption, and tendered the amount of the appraisement, but the trustees refused the application, and are about to sell the lots at public auction. And the bill prays, that the trustees may be compelled to convey the lots to the complainant, on payment of the appraised value. An injunction was granted, restraining the trustees from otherwise disposing of the lots.

The answer admits, that the lots are a part of the canal property, and were appraised at the amount stated; that complainant entered into possession of the lots in 1841, and has since retained possession of the same, and made improvements thereon; that he applied to purchase the lots, and offered to pay the appraised value; and that the application was refused, and the trustees intend to sell the lots at public auction.

The answer alleges, that in the year 1835, the canal commissioners, at an expense of $2,500, inclosed the lots with a substantial fence, put up two stables, and erected a canal office, and that the same were used for canal purposes, until November, 1837; that the commissioners then rented the premises to H. L. Rucker, who occupied them till 1841; that the complainant then acquired the possession of the lots, with the permission of the canal commissioners, under an agreement to pay them rent therefor; that in September, 1845, complainant leased the premises of the trustees for two years, at an annual rent of $225; that he paid a portion of the rent, and the trustees have recovered judgment against him for the balance of the rent at that rate, up to the 26th of June, 1849; that complainant received the possession of the lots as tenant, and continued in possession as such, and made the improvements for his temporary convenience, and for the purpose of carrying on his business; and the answer denies that complainant went into possession with a design of becoming the purchaser of the lots, or that he has any right of preëmption to the same. There was a replication to the answer.

It appeared, in evidence, that, in 1835, the canal commissioners inclosed the lots with a substantial board fence, and erected a house and two stables thereon; the house was used for a canal office, the stables for the canal horses, and the other parts of the lots for a garden and pasture; the premises were thus used for canal purposes until November, 1837, when the canal office was changed to Lockport, and the lots were leased to H. L. Rucker, who occupied them as tenant till 1841; the improvements on the lots were then worth about $1,000. Rucker made repairs and improvements at the cost of $150. In 1841, the complainant rented the premises from the canal commissioners, and went into possession of the same, which he has ever since

retained; prior to November, 1842, complainant, at an expense of about $1,500, made various improvements on the lots, consisting of a blacksmith's shop, in which were two forges and a vice-bench, a coal-house, a soot-house, a large building for a foundery and machine-shop in which was a steam-engine on a stone foundation, a well and aqueduct connecting it with the river, some new fencing, a porch and kitchen, a side-walk, and repairs, painting, plastering and papering of the canal office, which he occupied for a dwelling-house; since that time he has resided on the premises, and carried on his business there. He executed the following paper: "Jacob Fry, acting commissioner of the Illinois and Michigan Canal, is hereby authorized and requested to take out of the back money due on section forty-six of said canal, or any other money due for work on said section, the sum of two hundred dollars, which sum is for rent of the old canal office at Chicago, up to the first of November, 1843. Lockport, Nov. 11th, 1843. Elihu Granger." On the 4th of September, 1845, a lease was executed by the trustees and complainant, by the terms of which the trustees leased the lots to complainant for two years from the 26th of June, 1845, and complainant agreed to pay them an annual rent of $225, in half-yearly instalments. The lease contained this stipulation: "And it is expressly understood, that the party of the second part does not hereby waive any preëmption right he may have in the above premises or any part thereof." The first half-year's rent was paid when due, and judgments have been recovered for all of the rent due at that rate up to the 26th of June, 1849, part of which have been paid.

On the final hearing of the case, the Circuit Court dissolved the injunction, and dismissed the bill; and the complainant prosecuted an appeal to this court.

The 13th section of the act of the 21st of February, 1843, is as follows: "Provided, that in all cases where improvements were made upon the said canal lands or lots, previous to the first day of February, eighteen hundred and forty-three, the owner of such improvements shall be entitled to purchase the said lands or lots on which said improvements are situated, at an appraisement to be made as aforesaid, without reference to said improvements."

The 2d section of the act of the 4th of March, 1843, provides, that "Any settler on canal lands who has not made his improvements previous to the first day of December, 1842, shall not be entitled to the preëmption rights granted by the provisions of an act for the completion of the Illinois and Michigan Canal. Approved, February 21st, 1843."

In our opinion, these provisions must be so construed as to apply only to cases where persons entered on vacant and unappropriated canal lands, and made valuable improvements thereon prior to the first day of December, 1842. It is indeed, immaterial, whether a party entered as a trespasser or under a license from the canal commissioners. But he must have acquired the possession for the purpose of making a settlement on the land, and with the intention of purchasing the same when it should be offered for sale. Such a party could properly be considered as a settler, and the owner of the improvements put upon the land. The right of preëmption is confined to settlers and owners of improvements. The term settler, denotes one who has personally, and in his own right, occupied and improved canal land, or caused it to be occupied and improved by another for his benefit; and the term owner applies not only to a settler, but to one succeeding to the rights of a settler, by the purchase of his improvements. The sole object of these provisions was to secure to the settler or his assignee the benefit of the improvements, by allowing him to purchase the land at a valuation made irrespective of the improvements. He has the privilege of purchasing the land on which his improvements are situated for what it would be worth, if no settlement had been made upon it. This was the entire scope and design of these provisions. And no broader construction was given them, in the case of The Trustees *v.* Brainard, 12 Ill. 487. It was not the intention of the legislature, that a party should acquire a right of preëmption to lands set apart or reserved for canal purposes. Nor was it intended, that an agent or servant of the State, intrusted with the possession of improved canal lands, should be permitted to purchase the same at the appraised value, and thereby obtain the benefit of improvements made at the expense of the canal fund, as well as the advantage of an increase

of value beyond the appraisement, merely because he had made repairs or put improvements on the property for his own convenience. Nor was it designed, that a lessee of improved canal lands should accomplish the same result, because he had made reparations to the demised premises, or put fixtures or other improvements thereon, for purposes of trade or manufacture. It was the settled purpose of the legislature, that the canal lands should be exposed to sale at public auction, so that the State might realize the full benefit of any advance upon the appraisement. And that is the only mode in which canal lands can be purchased, except where a right of preëmption exists in favor of a settler or his assignee, as before indicated. This right to purchase at the appraisement, forms the only exception to the general mode of disposing of the canal lands; and a party claiming the right, ought clearly to show that he is within the exception. It remains to be considered, whether the complainant occupies such a position.

As early as the year 1835, the lots in question were set apart for canal purposes. The same were improved by the canal commissioners, and occupied by them until the canal office was removed from Chicago. Although the lots were no longer actually used for canal purposes, the improvements were not abandoned or relinquished by the commissioners. On the contrary, they leased the premises to Rucker, and received compensation for the use of the improvements. The improvements made by him became the property of the State, inasmuch as he did not remove them before he gave up the possession. In 1841, the complainant leased the lots from the canal commissioners, and from that time he occupied them as tenant, paying rent therefor. In a legal sense, his possession was the possession of the State. He did not occupy the premises in his own right, but as the tenant of the State. Under these circumstances, he made repairs for his own convenience, and erected additional improvements, for the purpose of carrying on his business. He made the reparations and improvements, as the lessee of the lots, and not as a settler. Improvements put on demised premises by a tenant, to promote his convenience, or for the purposes of trade or manufacture, and which can be detached without material

injury to the estate, may be removed by him during the term. If not removed before he surrenders the possession, they become the property of the landlord. The complainant made the improvements with reference to his right as a tenant to remove them, and not with the design of acquiring a right of preemption to the lots. And he may yet assert this right of removal before he quits the premises. He cannot be regarded as a settler on the lots, for they were occupied and improved long before he obtained the possession. Nor is he, in any sense, the owner of the improvements made by the canal commissioners and Rucker, for he never acquired any interest in them, by purchase or otherwise. These improvements have never been abandoned by the State, but on the other hand, have always been claimed and treated as part of the canal property, by the canal commissioners and their successors, the board of trustees. The complainant did not enter on the lots for the purpose of making a settlement, nor with the view of acquiring a permanent residence thereon. He obtained the possession of improved premises as a tenant, and for the purpose of a temporary occupancy only. He must rely on his right to take away the improvements erected by him, or trust to the chances of obtaining the lots at public sale.

The decree is affirmed. 　　　　　　　　*Decree affirmed.*